[Cite as *State v. Elder*, 2015-Ohio-3564.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| NICOS TRAVIAL ELDER | : | Case No. 2014CA00135 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Case No. 2013CR1334

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      August 31, 2015

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
Prosecuting Attorney
By: RONALD MARK CALDWELL
Assistant Prosecuting Attorney
110 Central Plaza South
Suite 510
Canton, OH 44702-1413

For Defendant-Appellant

JONATHAN T. SINN
137 South Main Street
Suite 300
Akron, OH 44308

*Farmer, J.*

{¶1}   On August 19, 2013, two masked men entered the apartment of Cleneisha Jones.  At the time, Ms. Jones was engaged in sexual intercourse with the victim, Jamar Johnson.  The intruders placed Ms. Jones in a closet and demanded money from Mr. Johnson.  Eventually, a struggle ensued and Mr. Johnson was shot as well as one of the intruders.

{¶2}   The police arrived and discovered Mr. Johnson on the front yard of the apartment building.  The police found appellant, Nicos Travial Elder, hiding in a nearby wooded area.  Appellant was wearing a black hoodie and a red bandana.  He had been shot in the leg.  Appellant told the police he had been shot while attempting to help Mr. Johnson.  Mr. Johnson died at the scene, and appellant was transported to the hospital where he received two surgeries to repair the damage to his leg.

{¶3}   Ms. Jones told police one of the intruders was wearing a black hoodie and a red mask.

{¶4}   The day after his second surgery, the police interviewed appellant at the police station.  He was in a wheelchair and wearing a hospital gown, wrapped in a blanket.

{¶5}   On October 8, 2013, the Stark County Grand Jury indicted appellant on one count of aggravated murder in violation of R.C. 2903.01(B), one count of kidnapping in violation of R.C. 2905.01(A)(2), and one count of aggravated robbery in violation of R.C. 2911.01(A)(1) and/or (A)(3), all with attendant firearm specifications in violation of R.C. 2941.145, and one count of having weapons while under disability in

violation of R.C. 2923.13(A)(3). The indictment included two death penalty specifications under R.C. 2929.04(A)(7).

{¶6} On February 25, 2014, appellant filed a motion to suppress his statements to the police, claiming his statements were not voluntary because he was in severe pain and was under the influence of pain medication. Hearings were held on March 5 and 18, 2014. By judgment entry filed May 14, 2014, the trial court denied the motion.

{¶7} A jury trial commenced on June 2, 2014 on all charges save the weapons count. The jury found appellant guilty as charged. The trial court found appellant guilty of the weapons count. The mitigation trial commenced on June 16, 2014. The jury recommended that appellant be sentenced to life in prison without the eligibility for parole. By judgment entry filed July 21, 2014, the trial court sentenced appellant to life in prison without parole eligibility as recommended by the jury. All other sentences were ordered to be served concurrently, except for the three year term for the firearm specification which was ordered to be served consecutively.

{¶8} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶9} "THE APPELLANT'S STATEMENT GIVEN TO THE POLICE ON AUGUST 22, 2014, SHOULD BE STRIKEN (SIC) FROM THE RECORD AND NOT BE CONSIDERED IN THE CURRENT PROCEEDING BECAUSE IT HAS BEEN REMOVED FROM THE EVIDENCE VAULT BY THE APPELLEE WITHOUT A COURT ORDER; THEREBY, MAKING IT UNAVAILABLE FOR THE UNDERSIGNED AND THIS COURT TO REVIEW."

II

{¶10} "THE TRIAL COURT ERRED IN REFUSING TO GRANT THE APPELLANT'S MOTION TO SUPPRESS BECAUSE AT THE TIME THE STATEMENT WAS MADE HE WAS IN EXTREME PAIN, UNDER THE INFLUENCE OF HIGH POWERED PAIN MEDICATION AND HAD SURGERY JUST THE DAY BEFORE THE STATEMENT WAS GIVEN."

III

{¶11} "THE TRIAL COURT ERRED IN NAMING CLENEISHA JONES AS A COURT'S WITNESS PER EVID.R. 614, BECAUSE IT WAS NOT ESTABLISHED THAT THE WITNESS WAS BEING EVEN REMOTELY DIFFICULT WITH THE STATE OF OHIO WHICH CALLED HER TO TESTIFY AND HER STATEMENTS WERE CONSISTENT WITH THE STATEMENTS SHE GAVE THE POLICE AND COUNSEL FOR THE STATE."

IV

{¶12} "THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION FOR CRIM.R. 29 EQUITTAL (SIC) BECAUSE THERE WAS INSUFFICIENT EVIDENCE PRESENTED BY THE APPELLEE TO PROVE EACH AND EVERY ELEMENT OF AGGRAVATED MURDER AND THE ACCOMPANYING DEATH PENALTY SPECIFICATION, AGGRAVATED ROBBERY AND KIDNAPPING."

V

{¶13} "THE APPELLANT'S CONVICTIONS OF AGGRAVATED MURDER WITH SPECIFICATIONS, AGGRAVATED ROBBERY AND KIDNAPPING ARE AGAINST THE WEIGHT OF THE EVIDENCE."

VI

{¶14} "THE APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE TRIAL COUNSEL BECAUSE TRIAL COUNSEL FAILED TO MOVE THE COURT TO INCLUDE LESSER AND INCLUDED OFFENSES INSTRUCTIONS OF FELONY MURDER, INVOLUNTARY MANSLAUGHTER AND RECKLESS HOMICIDE."

VII

{¶15} "THE JURY ERRED IN SENTENCING THE APPELLANT TO LIFE IN PRISON WITHOUT THE POSSIBILITY OF PAROLE RATHER THAN LIFE IN PRISON WITH THE POSSIBILITY OF PAROLE AFTER SERVING 25 OR 30 YEARS ON (SIC) PRISON."

I

{¶16} Appellant claims his videotaped statement given to police should be stricken from the record because the videotape is unavailable for review. We disagree.

{¶17} In his brief at 4, appellant claimed the following:

In the matter at hand, Appellate counsel has attempted to locate the recorded interview of Mr. Elder, but was informed by the trial court administrator that it had been removed by the Appellee and was therefore, unavailable. There was a transcript of the (sic) Mr. Elder's statement marked as an Exhibit, Exhibit 16, but was not made a part of the record. See Trial Transcript - Volume VII, page 228.

{¶18} From a review of the exhibits marked into evidence by the court reporter and listed in Vol. VII T. at 6, State's Exhibit 16 is the "Recorded Interview – Defendant" and is a CD. *Id.* at 228. State's Exhibit 17 is "Interview Transcript of Defendant/Redacted." Both were admitted into evidence. *Id.* at 314-316. Clearly appellant's videotaped statement to police was made a part of the record. In fact, this court reviewed the videotaped statement for purposes of this appeal.

{¶19} We find appellant's argument that the videotaped statement was not made a part of the record to be incorrect. Further, a redacted transcript of the videotaped statement was admitted as State's Exhibit 17, not 16, and was also made a part of the record. We note at no time did appellant, through his trial counsel or appellate counsel, make a request to the trial court for a copy of the CD itself.

{¶20} Assignment of Error I is denied.

II

{¶21} Appellant claims the trial court erred in denying his motion to suppress because his statement to the police was involuntary as he had been recently released from the hospital following surgery, was in extreme pain, and was on high powered pain medication. We disagree.

{¶22} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 486 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592 (4th Dist.1993). Second, an appellant may argue the

trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist.1993); *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶23} As the trial court noted in its May 14, 2014 judgment entry denying the motion to suppress, appellant was read his constitutional rights and signed a waiver of his Miranda rights. Appellant's waiver must be voluntarily, knowingly, and intelligently made. *Miranda v. Arizona,* 384 U.S. 436 (1966). As stated in *State v. Nelson,* 4th Dist. Ross No.1984, 1994 WL 534930, at *2 (Sept. 22, 1994), a valid waiver of constitutional rights should be reviewed in the context of the totality of the circumstances surrounding the waiver and must meet two criteria:

> The analysis of a waiver's validity has two distinct aspects. First, the relinquishment of the right must have been voluntary in the sense that

it was the product of a free and deliberate choice, rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right abandoned and the consequences of the decision to abandon it.

{¶24} In its judgment entry, the trial court noted when appellant gave his statement to the police, he was wearing a hospital gown and was wrapped in a blanket. The trial court stated, "[i]t is apparent from the video of the interview, that at times the defendant appeared to be woozy, cold, and in pain." Although the trial court stated it did not condone the manner in which appellant was taken from the hospital in his hospital gown and interviewed so soon after having surgery, the trial court concluded the following:

A review of the transcript and videotape of the interview of the defendant in this case, does not reflect coercive conduct by the police nor is there evidence of activity sufficient to overbear the will of the accused. In looking at the totality of the circumstances including the defendant's age, mentality and prior criminal experience, and the brief period of the interrogation, the Court finds that defendant's statement was voluntarily made. The defendant was not threatened or handcuffed and the officers asked about his comfort level. He was also provided with food, drink and both a smoke and bathroom break. Finally, the defendant's mental state

was further demonstrated by this own questions as well as his request for an attorney during the interrogation.

*** 

Pursuant to a review of the totality of the circumstances, and as demonstrated by the Defendant's exercise of his right to counsel during the interrogation by requesting an attorney, the Court finds that the Defendant knowingly and intelligently waived his Miranda rights.

{¶25} In reviewing the videotape (State's Exhibit 16), this court found appellant appeared cognitive and responsive. He was able to answer questions regarding his address or lack thereof, his mother's address and phone number, the location of the incident, and the events of the evening prior to the incident. Once confronted with what the police knew about the incident, appellant requested an attorney and asked to call his mother. All of these factors lead to the single conclusion that appellant's statement was voluntary and was knowingly and intelligently given.

{¶26} Upon review, we find the trial court did not err in denying appellant's motion to suppress.

{¶27} Assignment of Error II is denied.

III

{¶28} Appellant claims the trial court erred in calling Cleneisha Jones as a court's witness pursuant to Evid.R. 614. We disagree.

{¶29} Evid.R. 614(A) and (C) state, respectively: "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to

cross-examine witnesses thus called" and "[o]bjections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present."

{¶30} Evid.R. 607(A) states in part: "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage."

{¶31} As explained by our brethren from the Second District in *State v. Arnold,* 189 Ohio App.3d 507, 2010-Ohio-5379, ¶ 44 (2nd Dist.):

"A trial court possesses the authority in the exercise of sound discretion to call individuals as witnesses of the court." *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144, paragraph four of the syllabus. "It is well-established that a trial court does not abuse its discretion in calling a witness as a court's witness when the witness's testimony would be beneficial to ascertaining the truth of the matter and there is some indication that the witness's trial testimony will contradict a prior statement made to police." *State v. Schultz,* Lake App. No. 2003–L–156, 2005-Ohio-345, 2005 WL 238153, ¶ 29; *State v. Lather,* 171 Ohio App.3d 708, 2007-Ohio-2399, 872 N.E.2d 991, ¶ 3.

{¶32} We note a specific objection was not made to the trial court calling Ms. Jones as a witness. Defense counsel simply stated, "I contend that she hasn't changed her story.***I can argue that. At the appropriate time." Vol. VI T. at 1003.

{¶33} An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long,* 53 Ohio St.2d 91 (1978); Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Long.* Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶34} In declaring Ms. Jones a court's witness, the trial court implied she was a hostile witness: "It is clear from the testimony and from the attitude of the witness, in response to your question and in response to the questions by the State of Ohio, that she is not here to support the state's position in this case. Clearly, this is an appropriate time for 614." Vol. VI T. at 1003-1004.

{¶35} We are not convinced that the trial court's opinion that Ms. Jones was not there to support the state's case was the appropriate standard vis-á-vis Evid.R. 607(A). Nevertheless, given the nature of the cross-examination by defense counsel and the subsequent re-cross by the state and defense counsel, we find any error to be harmless for the following reasons.

{¶36} During cross-examination by defense counsel, Ms. Jones affirmatively stated appellant was not one of the two intruders who came into her apartment. Vol. VI T. at 999. During the state's re-cross, Ms. Jones stuck with her testimony that she did

not know one of the two intruders was appellant.  *Id.* at 1005, 1008-1009.  During re-cross by defense counsel, Ms. Jones explained her testimony (*Id.* at 1012-1013):


A. I told them [the police] that I did not know it was Nicos until the next day.

Q. Okay.

A. And that I did not have anything to do with it.

Q. And how did you know the next day that it was Nicos?

A. Because the streets was saying that it was him.

Q. Okay.  So it was out on the street: Hey, this is the guy that they arrested for this?

A. Right.

Q. Right?  What was your reaction to that?

A. To what?

Q. To hearing that they'd arrested Nicos and said that he was the one who did this?

A. I just didn't understand.  Like.

Q. Okay.  Why didn't you understand?

A. 'Cause like Nicos like know him like.

Q. Was he man who was in your apartment?

A. No, he was not.

{¶37} The calling of Ms. Jones pursuant to Evid.R. 614 gave defense counsel another opportunity to have her state that appellant was not one of the perpetrators.

{¶38} Under a plain error standard, we find the outcome was not prejudiced by the mode of interrogation as it provided an additional avenue for defense counsel to establish appellant did not commit the crime.

{¶39} Assignment of Error III is denied.

IV, V

{¶40} Appellant claims the trial court erred in denying his Crim.R. 29 motion for acquittal and the evidence was insufficient to support the jury's guilty findings. Because all the direct evidence was given during the state's case-in-chief and only one witness, Ericka Johnson, M.D., was presented by the defense, we will address these assignments collectively.[1]

{¶41} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175. We note the weight to

---

[1]Dr. Johnson was called to testify about appellant's severe orthopedic injury and surgeries and to establish that she had prescribed pain medication to appellant prior to his statement to the police. Vol. VII T. at 160-162. Dr. Johnson admitted she did not have "any personal knowledge as to what was or was not taken" by appellant. *Id.* at 165.

be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶42} Crim.R. 29 governs motion for acquittal. Subsection (A) states the following:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶43} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in *State v. Bridgeman,* 55 Ohio St.2d 261 (1978), syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

{¶44} The jury found appellant guilty of aggravated murder in violation of R.C. 2903.01(B), kidnapping in violation of R.C. 2905.01(A)(2), aggravated robbery in

violation of R.C. 2911.01(A)(1) and/or (A)(3), and the firearm specifications in violation of R.C. 2941.145:

[R.C. 2903.01(B)] No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, trespass in a habitation when a person is present or likely to be present, terrorism, or escape.

[R.C. 2905.01(A)(2)] No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person***[t]o facilitate the commission of any felony or flight thereafter.

[R.C. 2911.01(A)(1) and/or (A)(3)] No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall***[h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; or [i]nflict, or attempt to inflict, serious physical harm on another.

[R.C. 2941.145] Imposition of a three-year mandatory prison term upon an offender under division (B)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense.

{¶45} Appellant argues evidence was not presented to specifically identify him as the shooter and/or perpetrator or establish that he possessed a firearm during the commission of the offense. Appellant further argues direct evidence was not presented linking him to the acts that resulted in Mr. Johnson's death. We disagree with these arguments for the following reasons.

{¶46} The direct evidence established appellant's shoe, cell phone, and DNA were found at the scene of the crime, Ms. Jones's apartment. Vol. IV T. at 749-750, 755, 785; Vol. VI T. at 1050-1052; Vol. VII T. at 217-219; State's Exhibits 1-Q, 1-N, and 2-6. Mr. Johnson's blood was found on appellant's sweatshirt and shoes. Vol.IV T. at 744-748, 755-757, 784-785; State's Exhibits 1-Q and 8.

{¶47} One of the perpetrators was described by Ms. Jones as wearing a black hoodie and a red mask. Vol. VI T. at 963-964. Appellant was found on the north side of the crime scene, hiding in the woods, wearing a black hoodie and a red bandana. Vol. V T. at 818-820, 846-847. The left cuff of appellant's hoodie contained gunshot residue.

Vol. VII T. at 144-145; State's Exhibits 8 and 8-A. From our review of the videotape of appellant's statement to the police that was also viewed by the jury, it is evident that appellant is left handed. Vol. VII T. at 232; Vol. VIII T. at 50.

{¶48} Appellant, at the scene and during his videotaped statement some two days later, told the police he was a passerby who observed the wounded and dying Mr. Johnson on the front lawn and went to his aid only to be shot himself. Vol. V T. at 844, 848; States Exhibit 16. The defense argued by defense counsel was different and was tailored to fit the evidence gathered from the crime scene.

{¶49} The jury, as the trier of fact, determines which evidence is worthy of belief. Direct evidence was presented to establish appellant's presence at the crime scene and that he was the shooter which could have reasonably led to the jury's guilty verdicts.

{¶50} Upon review, we find sufficient evidence to overcome the Crim.R. 29 motion for acquittal and no manifest miscarriage of justice.

{¶51} Assignments of Error IV and V are denied.

VI

{¶52} Appellant claims his trial counsel was deficient in failing to request jury instructions on felony murder, involuntary manslaughter, and reckless homicide. We disagree.

{¶53} The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. Appellant must establish the following:

2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶54} This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." *State v. Post,* 32 Ohio St.3d 380, 388 (1987).

{¶55} The entire case was tried under the theory that appellant was not the perpetrator of the offense, but was in fact a victim.

{¶56} During opening statement, defense counsel explained appellant went to Ms. Jones's apartment because he felt "bad about not giving her the money that he owed her." Vol. IV T. at 713. Defense counsel then explained (*Id.* at 714-716):

The only light that would have been on in the apartment, you'll hear, is coming from the television, because she was playing music through her X box. And, ah, the, the TV lights up, with like the name of the song and

the name of the artist on the television screen, and that was the source of light in the room.

So Nicos hears the music and heads back to the bedroom. When he gets into the bedroom, he realizes that there is someone lying on the floor with duct tape on their hands.

You'll hear testimony that the individual on the floor had duct tape around their eyes, around their hands, around their ankles.

Later on, Nicos will, will figure out this is Mr. Johnson.

As he enters the room and sees the man laying on the floor, you will hear testimony that he feels a gun to the back of his head.

Person behind him says, Empty your pockets onto the bed.

And Nicos does that. He takes the money that he was going to pay Cleneisha out of his pocket, puts it on the bed. He also takes some crack cocaine out of his pocket and puts that on the bed.

At this point in time, once his pockets are empty, the person behind him puts a red bandana around his face and ties it on so that Nicos' vision is blocked.

At this point you will hear testimony that while this, this perpetrator was defend - - or was distracted, Mr. Johnson attempted to lunge at him to try and get away from the situation. And the man with the gun began firing his gun.

Nicos tried to run out of the room, but found he couldn't run, because he'd been shot in the leg.

The bullet broke both of the bones in his leg, shattering the bones, and part of the bone was sticking out almost through the skin by the time he got to the hospital.

So he drug himself out of the apartment.

{¶57} During closing argument, defense counsel argued appellant was in the wrong place at the wrong time, and there were other logical explanations for the facts i.e., the existence of appellant's shoe, cell phone, and blood in the apartment. Vol. VIII T. at 36-41. Defense counsel admitted that appellant lied to the police, but excused it as a cultural fact that in appellant's "neighborhood," you do not speak to the police and he was under the influence of pain medication. *Id.* at 42-43, 45. It was appellant's consistent defense that he did not break-in to the apartment and attempt to rob or murder Mr. Johnson.

{¶58} With this specific theory, we do not find defense counsel was deficient in not requesting alternative offenses.

{¶59} Assignment of Error VI is denied.

VII

{¶60} Appellant claims the trial court erred in sentencing him to life imprisonment without the eligibility for parole based upon the mitigating factors presented. We disagree.

{¶61} Following a determination that the sentence imposed is not contrary to law, a trial court's decision on sentencing is reviewed under an abuse of discretion. In order to find an abuse of discretion, we must determine the trial court's decision was

unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983). As appellant was facing the death penalty, life imprisonment without parole eligibility is not contrary to law. R.C. 2929.02 and 2929.04.

{¶62} The jury, as the trier of fact in weighing the mitigation factors, recommended life imprisonment without parole eligibility.

{¶63} R.C. 2929.04 governs criteria for imposing death or imprisonment for a capital offense. Subsections (B) and (C) state the following:

> (B) If one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment or count in the indictment and proved beyond a reasonable doubt, and if the offender did not raise the matter of age pursuant to section 2929.023 of the Revised Code or if the offender, after raising the matter of age, was found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:
>
> (1) Whether the victim of the offense induced or facilitated it;

(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law;

(4) The youth of the offender;

(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

(C) The defendant shall be given great latitude in the presentation of evidence of the factors listed in division (B) of this section and of any other factors in mitigation of the imposition of the sentence of death.

The existence of any of the mitigating factors listed in division (B) of this section does not preclude the imposition of a sentence of death on the offender but shall be weighed pursuant to divisions (D)(2) and (3) of section 2929.03 of the Revised Code by the trial court, trial jury, or the

panel of three judges against the aggravating circumstances the offender was found guilty of committing.

{¶64} The mitigating factors established appellant was twenty-seven years old and had a non-participating father who was involved with drugs and had a criminal and violent history, including domestic violence with appellant's mother, a mother who tried, but did not cooperate with the school system in assisting appellant. Mitigation T. at 43-44, 49, 53-55, 82-83, 117, 133-134. Appellant has a low I.Q. of 77, with an early onset of learning problems, is learning disabled, is unable to focus on things, and has a low frustration tolerance. *Id.* at 134-135, 141-142, 145, 149, 166.

{¶65} He was seriously injured at five years old when his foot was run over by a car, was not strictly supervised, and was an at-risk child. *Id.* at 61-64. Starting at about eight years old, appellant would ride the bus by himself from Canton to Massillon and stay with his older half-sister, and at around twelve years old, moved into her home. *Id.* at 44, 62-64, 123. Part of the problem he had with his mother was that he was resistant to following rules. *Id.* at 162. Appellant was "on the streets" from age eleven/twelve, and started selling drugs. *Id.* at 116, 123, 130, 132, 135, 162-163.

{¶66} The mitigation expert, psychologist Jeffrey Smalldon, Ph.D., met with appellant and described him as "polite, respectful, cooperative, though in sort of a passive, depressed, seething way. He was pretty sluggish, lethargic." *Id.* at 127-128. Although appellant has a child, he appears to not be parenting very seriously. *Id.* at 135-136. Appellant's abuse of alcohol and drugs were viewed as an escape mechanism. *Id.* at 137-138. Dr. Smalldon diagnosed appellant with a mood disorder,

alcohol and marijuana dependency, cognitive disorder, learning disorder, and possibly undiagnosed ADD. *Id.* at 149-150.

{¶67}  We find these factors clearly outweigh the imposition of death, but do not outweigh the sentence of life imprisonment.

{¶68}  Upon review, we find the trial court did not abuse its discretion in following the jury's recommendation.

{¶69}  Assignment of Error VII is denied.

{¶70}  The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Baldwin, J. concur.

SGF/sg